**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SCOTT MYERS on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. _____ |
| FLAGSTAR BANK, FSB, ) ) | |
| Defendant. ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Scott Myers ("Plaintiff"), brings this Class Action Complaint, on behalf of himself and all others similarly situated (the "Class"), against Defendant, Flagstar Bank, FSB ("Flagstar" or "Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

## NATURE OF THE CASE

1.      Plaintiff brings this class action against Flagstar for Flagstar's failure to properly secure and safeguard protected personally identifiable information, including without limitations, names, addresses, financial information, and social security numbers (collectively, "PII"), for failing to comply with industry standards to protect information systems that contain PII, and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their PII had been compromised. Plaintiff seeks, among other things, damages, orders requiring Flagstar to fully and accurately disclose the nature of the information that has been compromised and to adopt reasonably sufficient security practices and safeguards to prevent incidents like the

1

disclosure in the future, and for Flagstar to provide identity theft protective services to Plaintiff and Class Members for their lifetimes, as Plaintiff and Class Members will be at an increased risk of identity theft due to the conduct of Flagstar described herein.

2.      Flagstar is a Michigan-based, federally chartered savings bank with assets of approximately $25 billion. Flagstar operates over 150 branches throughout Michigan, Indiana, California, Wisconsin, and Ohio.[1]

3.      In the course of doing business with Flagstar, consumers provide their personal information in order to obtain loans or open financial accounts. In turn, Flagstar comes into possession of, and maintains files containing, the PII of its customers.

4.      On June 17, 2022, Flagstar notified its customers that their PII that had been stored on Flagstar's systems was exfiltrated by unauthorized third parties (the "Data Breach").[2]

5.      As a result of Flagstar's failure to implement and follow basic security procedures, Plaintiff's and Class Members' PII is now in the hands of criminals. Plaintiff and Class Members face a substantial increased risk of identity theft, both currently and for the indefinite future. Consequently, Plaintiff and Class Members have had to spend, and will continue to spend, significant time and money in the future to protect themselves due to Flagstar's failures.

6.      Plaintiff, on behalf of himself and all others similarly situated, alleges claims for negligence, negligence *per se*, unjust enrichment, and declaratory judgment. Plaintiff seeks damages and injunctive relief, including the adoption reasonably sufficient practices to safeguard

---

[1] https://www.flagstar.com/about-flagstar.html (last accessed Sep. 7, 2022).
[2] An exemplar of the Data Breach notification can be found at
https://apps.web.maine.gov/online/aeviewer/ME/40/667f2112-b49f-445d-be03-
dee38e32bf8e/b6547621-069e-419e-bdf1-9652e3e22c44/document.html.

PII in Flagstar's custody in order to prevent incidents like the Data Breach from reoccurring in the future.

## PARTIES

7.      Plaintiff Scott Myers is a citizen and resident of the State of Michigan. At all times relevant to this Complaint, Plaintiff was a customer of Flagstar, whose PII was disclosed without authorization to unknown third parties as a result of the Data Breach. Plaintiff is a citizen of Michigan.

8.      Plaintiff has been a customer with Flagstar for approximately two years, and currently has a mortgage through Flagstar.

9.      Since the announcement of the Data Breach, Plaintiff has been required to spend his valuable time monitoring his various accounts in an effort to detect and prevent any misuses of his PII – time which he would not have had to expend but for the Data Breach.

10.     As a result of the Data Breach, Plaintiff will continue to be at heightened risk for fraud and identity theft, and their attendant damages for years to come.

11.     Defendant Flagstar Bank, FSB is a Michigan corporation, with its principal place of business in Troy, Michigan. Defendant is a citizen of Michigan.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

13.     This Court has personal jurisdiction over Defendant because Defendant resides in this District, at all relevant times it has engaged in substantial business activities in Michigan.

14.     Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in this District because this is where the Defendant resides and is where a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### *The Value of Private Information and Effects of Unauthorized Disclosure*

15.     Flagstar was well aware that the protected financial information and PII it touches is highly sensitive and of significant value to those who would use it for wrongful purposes.

16.     PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[3] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and other protected financial information on multiple underground Internet websites, commonly referred to as the "dark web."

17.     While PII is valued at approximately $1 per line of information, "Bank account credentials can sell for anywhere between $200 and $500 apiece. . . ."[4]

18.     Protected financial information is particularly valuable because criminals can use not only a person's personal information for identity theft, but can also gain access to bank accounts and cash contained therein.

---

[3] https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft
[4] *Id.*

19.     "Financial identity theft is a significant crime, and potentially one of the more damaging types of identity theft. Consider the possibilities – an identity thief gaining access to your bank accounts or retirements accounts and stealing your hard-earned money."[5]

20.     The ramifications of Flagstar's failure to keep Plaintiff and Class Members' PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

21.     Further, criminals often trade stolen PII on the "cyber black market" for years following a breach. Cybercriminals can also post stolen PII on the internet, thereby making such information publicly available.

22.     Flagstar knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its data security systems were breached. Flagstar failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

***Financial Institutions are Particularly Vulnerable to Data Breaches***

23.     Flagstar has a responsibility to securely maintain the customer PII that it receives and keep it safe from harm. Flagstar knows that PII, specifically when it includes financial information, is a prime target for data breaches.

24.     "Due to the nature of these businesses and the sensitivity of their data, financial firms are hit with approximately 300 times more cyber attacks than businesses in other industries."[6]

---

[5] https://www.lifelock.com/learn-identity-theft-resources-what-is-financial-identity-theft.html
[6] https://www.bitsight.com/blog/financial-data-breaches-2019-capital-one-first-american-desjardins-more

25.     "In 2018 the sector reported 819 cyber incidents, a significant increased from the 69 incidents reported in 2017."[7]

26.     "Banks and financial services organizations were the targets of 25.7 percent of all malware attacks [in 2018], more than any other industry."[8]

27.     Particularly in the time since the outbreak of Covid-19, while more employees are working remotely than ever before, cybercriminals are working to exploit fear and uncertainty. From February to April 2020, cyber attacks in the financial sector increased by 238 percent.[9]

28.     Flagstar knew, or should have known, the importance of safeguarding Plaintiff and Class Members' PII entrusted to it by its customers around the country and knew, or should have known, the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on consumers as a result of a breach. Flagstar failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

***The Data Breach***

29.     On June 2, 2022 a forensic investigation conducted by Flagstar revealed that files containing customers' PII had been accessed and acquired from its network between December 3, 2021 and December 4, 2021.[10]

30.     On June 17, 2022, nearly six months after the Data Breach, Flagstar sent notices to its customers explaining that their PII has been exposed, and offering identity theft protection services.[11]

---

[7] *Id.*
[8] https://www.forbes.com/sites/zakdoffman/2019/04/29/new-cyber-report-25-of-all-malware-hits-financial-services-card-fraud-up-200/?sh=a15e9e17a47a
[9] https://www.helpnetsecurity.com/2020/06/17/cybercriminals-sophisticated/
[10] *See* Notice, *supra* n.2.
[11] https://apps.web.maine.gov/online/aeviewer/ME/40/667f2112-b49f-445d-be03-dee38e32bf8e.shtml

31.     Defendant notified the Office of the Maine Attorney General that the PII obtained in the Data Breach involved social security numbers.[12]

32.     On June 20, 2022, Defendant notified the Attorney General of Texas that the PII also included financial information (e.g., account numbers, and credit or debit card numbers).[13]

33.     The total number of people impacted by the Data Breach, as disclosed by Flagstar, is 1,547,169.[14]

***FTC Guidelines***

34.     Flagstar is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

35.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[15]

36.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[16]

---

[12] *Id.*
[13] https://oagtx.force.com/datasecuritybreachreport/apex/DataSecurityReportsPage
[14] *See*, *supra* n.11
[15] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf
[16] https://www.ftc.gov/system/files/documents/plain-language/pdf-0136proteting-personal-information.pdf.

37.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[17]

38.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39.     Flagstar failed to properly implement basic data security practices. Flagstar's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

40.     Flagstar was at all times fully aware of its obligations to protect the PII of consumers because of its position as a large financial institution, which gave it direct access to reams of consumer PII. Flagstar was also aware of the significant repercussions that would result from its failure to do so.

*Plaintiff and Class Members Suffered Damages*

41.     The ramifications of Flagstar's failure to keep PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may

---

[17] *Id.*

continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud, occurring 65 percent of the time.[18]

42. In 2019 alone, consumers lost more than $1.9 billion to identity theft and fraud.[19]

43. Besides the monetary damage sustained, consumers may also spend anywhere from approximately 7 hours to upwards of 1,200 hours trying to resolve identity theft issues.[20]

44. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

45. Despite all of the publicly available knowledge of the continued compromises of PII, Flagstar's approach to maintaining the privacy of protected financial information and other PII was reckless, or in the very least, negligent.

46. As a result of Flagstar's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable PII; the imminent and certain impeding injury flowing from fraud and identity theft posed by their PII being placed in the hands of criminals; damages to and diminution in value of their PII that was entrusted to Defendant with the understanding the Defendant would safeguard the PII against disclosure; and continued risk to Plaintiff's and the Class Members' PII, which remains in the possession of Defendant and which is subject to

---

[18] https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics
[19] *Id.*
[20] https://www.lifelock.com/learn-identity-theft-resources-how-long-does-it-take-to-recover-from-identity-theft

further breaches so long as Defendant fails to undertake appropriate an adequate measures to

protect the PII that was entrusted to it.

## CLASS ALLEGATIONS

47.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, on behalf of the class defined as:

> All individuals in the United States whose PII was compromised in the Flagstar
> Data Breach which occurred in December 2021.

48.     Excluded from the Class is Defendant, their subsidiaries and affiliates, their

officers, directors and members of their immediate families and any entity in which Defendant

has a controlling interest, the legal representative, heirs, successors, or assigns of any such

excluded party, the judicial officer(s) to whom this action is assigned, and the members of their

immediate families.

49.     Plaintiff reserves the right to modify or amend the definition of the proposed

Class if necessary before this Court determines whether certification is appropriate.

50.     The requirements of Rule 23(a)(1) are satisfied.  The class described above is so

numerous that joinder of all individual members in one action would be impracticable.  The

disposition of the individual claims of the respective class members through this class action will

benefit both the parties and this Court. The exact size of the class and the identities of the

individual members thereof are ascertainable through Defendant's records, including but not

limited to, the files implicated in the Data Breach.

51.     The requirements of Rule 23(a)(2) are satisfied.  There is a well-defined

community of interest and there are common questions of fact and law affecting members of the

Class. The questions of fact and law common to the Class predominate over questions which

may affect individual members and include the following:

a. Whether and to what extend Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' PII;

c. Whether Defendant had duties not to disclose the PII of Class Members to unauthorized third parties;

d. Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e. Whether Defendant failed to adequately safeguard the PII of Class Members;

f. Whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class Members' PII by storing that information unencrypted on computers and hard drives in the manner alleged herein, including failing to comply with industry standards;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

i. Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

k.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

52.   The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the members of the Class.  The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendant to safeguard PII.

53.   Plaintiff and members of the Class were each customers of Flagstar, each having their PII obtained by an unauthorized third party.

54.   The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the Class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class.  In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class members are substantially identical as explained above. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small.  As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them.  Certifying the case as a Class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendant's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

55.     Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

56.     Flagstar owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their PII in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. More specifically, this duty including, among other things: (a) designing, maintaining, and testing Flagstar's security systems to ensure that Plaintiff's and Class Members' PII in Flagstar's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warning and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

57.     Flagstar had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Flagstar was obligated to act with reasonable care to protect against these foreseeable threats.

58.     Flagstar breached the duties owed to Plaintiff and Class Members and thus was negligent. Flagstar breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff and Class Members; (b) detect the breach while it was ongoing; (c)

maintain security systems consistent with industry standards; and (d) disclose that Plaintiff's and Class Members' PII in Flagstar's possession had been or was reasonably believed to have been, stolen or compromised.

59.     But for Flagstar's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised.

60.     As a direct and proximate result of Flagstar's negligence, Plaintiff and Class Members have suffered injuries, including:

   a.   Theft of their PII;

   b.   Costs associated with requested credit freezes;

   c.   Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

   d.   Costs associated with purchasing credit monitoring and identity theft protection services;

   e.   Unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects of their credit;

   f.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

   g.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges,

cancelling and reissuing cards, enrolling in credit monitoring and identity theft

protection services, freezing and unfreezing accounts, and imposing withdrawal

and purchase limits on compromised accounts;

h.   The imminent and certainly impending injury flowing from potential fraud and

identity theft posed by their PII being placed in the hands of criminals;

i.   Damages to and diminution in value of their PII entrusted, directly or indirectly,

to Flagstar with the mutual understanding that Flagstar would safeguard

Plaintiff's and Class Members data against theft and not allow access and misuse

of their data by others; and

j.   Continued risk of exposure to hackers and thieves of their PII, which remains in

Flagstar's possession and is subject to further breaches so long as Flagstar fails to

undertake appropriate and adequate measures to protected Plaintiff.

61.    As a direct and proximate result of Flagstar's negligence, Plaintiff and Class

Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in

an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Class)**

62.    Plaintiff restates and realleges all proceeding factual allegations above as if fully

set forth herein.

63.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by

companies such as Flagstar or failing to use reasonable measures to protect PII. Various FTC

publications and orders also form the basis of Flagstar's duty.

64.     Flagstar violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with the industry standards. Flagstar's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach within the financial industry.

65.     Flagstar's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

66.     Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

67.     Moreover, the harm that has occurred is the type of harm that the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

68.     As a direct and proximate result of Flagstar's negligence, Plaintiff and Class Members have been injured as described herein and in Paragraph 60 above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

69.     Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

70.     Plaintiff and Class Members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by Flagstar and that was ultimately stolen in the Data Breach.

71.     Flagstar was benefitted by the conferral upon it of the PII pertaining to Plaintiff and Class Members and by its ability to retain and use that information. Flagstar understood that it was in fact so benefitted.

72.     Flagstar also understood and appreciated that the PII pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Flagstar maintaining the privacy and confidentiality of that PII.

73.     But for Flagstar's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been entrusted with Flagstar. Further, if Flagstar had disclosed that its data security measures were inadequate, Flagstar would not have been permitted to continue in operation by regulators and participants in the marketplace.

74.     As a result of Flagstar's wrongful conduct as alleged in this Complaint (including among other things its utter failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII), Flagstar has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

75.     Flagstar's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identify thieves.

17

76.     Under the common law doctrine of unjust enrichment, it is inequitable for Flagstar to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff and Class Members' PII in an unfair and unconscionable manner. Flagstar's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

77.     The benefit conferred upon, received, and enjoyed by Flagstar was not conferred officiously or gratuitously, and it would be inequitable and unjust for Flagstar to retain the benefit.

78.     Flagstar is therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on Flagstar as a result of its wrongful conduct, including specifically the value to Flagstar of the PII that was stolen in the Data Breach and the profits Flagstar received from the use of that information.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Class)**

79.     Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

80.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

81.     An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Flagstar is currently maintaining data security

measures adequate to protect Plaintiff's and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Flagstar's data security measures remain inadequate, despite Flagstar's public statement that it "promptly took steps to secure its environment." Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of his PII will occur in the future.

82.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

     a.   Flagstar owes a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes; and

     b.   Flagstar continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

83.     This Court also should issue corresponding prospective injunctive relief requiring Flagstar to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

84.     If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Flagstar. The risk of another such breach is real, immediate, and substantial. If another breach at Flagstar occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

85.     The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Flagstar if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Flagstar of complying with an injunction by

employing reasonable prospective data security measures is relatively minimal, and Flagstar has a pre-existing legal obligation to employ such measures.

86.     Issuance of the requested injunction will not disserve the public interest. To the contrast, such an injunction would benefit the public by preventing another data breach at Flagstar, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff on behalf of himself and all other similarly situated, prays for relief as follows:

a.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.     For damages in an amount to be determined by the trier of fact;

d.     For an order of restitution and all other forms of equitable monetary relief;

e.     Declaratory and injunctive relief as described herein;

f.     Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

g.     Awarding pre- and post-judgment interest on any amounts awarded; and,

h.     Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable.

Dated: September 14, 2022                    Respectfully submitted,

                                             */s/Kevin J Stoops*

                                             Kevin J Stoops (P64371)
                                             **SOMMERS SCHWARTZ PC**
                                             One Towne Square, Suite 1700
                                             Southfield, MI 48076
                                             (248) 784-6613
                                             (248) 936-2143 (f)
                                             kstoops@sommerspc.com

                                             Gary F. Lynch
                                             Jamisen A. Etzel
                                             **LYNCH CARPENTER, LLP**
                                             1133 Penn Avenue, 5th Floor
                                             Pittsburgh, PA 15222
                                             T: (412) 322-9243
                                             F: (412) 231-0246
                                             gary@lcllp.com
                                             jamisen@lcllp.com

                                             *Counsel for Plaintiff*